**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JEANNETTE SOTO, ) | |
| ) | |
| Plaintiff, ) | Case No.: 18-CV-4337 |
| ) | |
| vs. ) | COMPLAINT FOR VIOLATION |
| ) | OF CIVIL RIGHTS |
| KAREN YARBROUGH, in her Individual ) | |
| Capacity, ERWIN ACOX, JR., in his ) | JUDGE JOHN Z. LEE |
| Individual Capacity, COOK COUNTY ) | |
| RECORDER OF DEEDS OFFICE, ) | MAGISTRATE MARY M. ROWLAND |
| and COOK COUNTY, ) | |
| ) | **JURY DEMANDED** |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

1. In 1969, Cook County was made the subject of a federal lawsuit in the Northern District of Illinois entitled *Michael Shakman et al. vs. Democratic Organization of Cook County, et al.*, Case No. 69 C 2145. In order to resolve many of the issues involved in that case, Cook County and the Cook County Recorder of Deeds Office entered into Consent Decrees that prohibited Cook County and the Cook County Recorder of Deeds Office from "conditioning, basing or knowingly prejudicing of affecting any term or aspect of government employment with respect to one who is a government employee upon or because of any political reason or factor".

2. The Consent Decrees are often referred to as the "*Shakman* Decrees."

3. The District Court for the Northern District of Illinois has retained jurisdiction over the *Shakman* case. As part of its jurisdiction over the case, the Court is empowered to enforce the *Shakman* Decrees. The authority of the Court is placed in the hands of a federal *Shakman* Monitor.

4. This action also arises under the United States Constitution, the Civil Rights Act of 1871 (42 U.S.C. §1983).

5. This court has jurisdiction under and by 28 U.S.C. §§1343 and 1331, and the *Shakman* Decrees.

6. Venue is founded in this judicial court upon 28 U.S.C. §1391 as the acts complained of arose in this district.

## **PARTIES**

7. At all times herein mentioned, Plaintiff Jeannette Soto ("Plaintiff") was and is a citizen of the United States and was within the jurisdiction of this court.

8. Defendant Karen Yarbrough ("Yarbrough") is sued in her individual capacity. At all times relevant herein unless otherwise stated, Defendant Yarbrough was the Cook County Recorder of Deeds.

9. Defendant Erwin Acox, Jr. ("Acox") is sued in his individual capacity. At all times relevant herein unless otherwise stated, Defendant Acox was the Chief of Human Resources for the Cook County Recorder of Deeds.

(Yarbrough and Acox are collectively referred to herein as the "Individual Defendants")

10. Defendant Cook County ("County") is and was at all relevant times a municipal corporation organized and existing under the laws of the State of Illinois. At all relevant times, Cook County administered itself through various departments and offices.

11. At all relevant times, Defendant Cook County Recorder of Deeds Office ("Recorder's Office") is and was an elected office of Cook County.

## FACTUAL ALLEGATIONS

12. Plaintiff began working as the Director of Human Resources in the Recorder's Office on October 31, 2016.

13. Plaintiff is not politically affiliated with Yarbrough. Defendants were each aware that Plaintiff was not politically affiliated with Yarborough.

14. In February 2017 Plaintiff began monitoring employee time and attendance as part of her duties.

15. Amongst others, Plaintiff submitted an incident report to Acox informing him that Linda Tyson, an employee politically connected to Yarbrough, was repeatedly tardy and violated the Recorder Office's time and attendance policy.

16. Acox overruled Plaintiff's recommendation and did not discipline Tyson for violating the Recorder Office's time and attendance policy.

17. After Plaintiff submitted this incident report to Acox, Acox and others stopped inviting Plaintiff to meetings where disciplinary issues were addressed even though she was the Director of Human Resources.

18. On March 17, 2017, Plaintiff met with Acox to discuss her 90-day evaluation. Plaintiff reviewed her evaluation with Acox and was given the opportunity to comment on her evaluation.

19. Plaintiff disagreed with her 90-day evaluation based upon the evaluation being based in part on Acox's assessment of Plaintiff's actions outside of the evaluation period. Plaintiff's 30 and 60-day evaluations were significantly better than her 90-day evaluation.

20. At all times, Plaintiff met her employer's legitimate employment expectations. Each and every negative evaluation provided to Plaintiff was false.

21. Shortly after her 90-day evaluation, on or about March 20, 2017, Plaintiff complained to Recorder's Compliance Director ("RCA"), Matthew Pryor ("Pryor"), that she believed she received a negative 90-day evaluation due to unlawful political discrimination based upon her lack of political affiliation with Yarborough.

22. In mid and late-March 2017, Plaintiff was asked to assist with the hiring process for a new Director of Compliance ("DOC") in the Recorder's Office.

23. As part of the hiring process, Plaintiff was designated as the individual who was to review potential applicants for the DOC position and categorize whether they were qualified for the position. Acox was not supposed to be involved in the process of selecting which candidates were qualified because he was on the interview panel for the qualified candidates.

24. Plaintiff attempted to evaluate candidates for the DOC position but did not have access to the Taleo system, which contained the candidate's employment applications. Acox provided Plaintiff with access to the Taleo system to evaluate candidates.

25. After providing Plaintiff with access to the Taleo system, Acox asked Plaintiff to provide him with a list of candidates so that he could "check [her] work." Acox indicated to Plaintiff that there were a few candidates that she did not categorize as qualified correctly.

26. Interviews of the candidates for the DOC position were conducted on March 21, 2017. Acox was forced to recuse himself from the interview process because he knew one or more of the candidates to be interviewed.

27. After the interview process, Plaintiff was tasked with putting the candidate rankings into an excel spreadsheet. After completing the rankings, Acox asked to see the final rankings. Plaintiff was uncomfortable showing Acox the rankings because he had to recuse himself from the

interviews but did so after receiving a direct order from Acox. Acox later told Plaintiff "It's so close, it's so close" in reference to the candidate rankings.

28. On March 23, 2017, Yarbrough selected an individual named Kevin Thomas ("Thomas") to be the DOC. Thomas was an individual personally known by Acox. Thomas was the second ranked person on Plaintiff's completed candidate rankings. Since Thomas was not the first ranked candidate, Yarbrough had to complete a statement explaining why she did not select the first ranked candidate.

29. Plaintiff informed Acox that Thomas was selected for the DOC position. Acox told Plaintiff to prepare an offer letter for Thomas. Plaintiff informed Acox that she still had to receive Yarbrough's explanation letter for why Thomas was selected over the first ranked candidate for the DOC position. Acox then asked Plaintiff to give him the interview materials for Thomas and the other candidates. Plaintiff told Acox, "I thought you recused yourself from the [interview] process."

30. On March 23, 2017, Plaintiff spoke with Pryor regarding the selection of Thomas. Pryor informed Plaintiff that it was not proper for Acox to be involved in the selection of Thomas.

31. On March 23, 2017 at 3:21 p.m., Pryor informed Plaintiff that she was being made the Acting Head of the Human Resources Department for the hiring process of the new DOC and asked her to temporarily suspend the hiring process while Pryor addressed concerns regarding the hiring process for the new DOC.

32. On March 24, 2017, Acox and Yarbrough terminated the Plaintiff's employment for the stated reason that she was an "at will employee", "it is not working out," and that Plaintiff was still within her 6-month probationary period.

33. To the best of Plaintiff's knowledge, she was not subject to a six-month probationary period.

34. The Defendants' stated reasons for Plaintiff's termination were false. Acox and Yarbrough retaliated against Plaintiff for recommending discipline for a politically connected employee, making complaints to the RCA, and participating in an investigation of political discrimination when they knowingly, willfully or recklessly terminated Plaintiff's employment. Acox and Yarborough further discriminated against Plaintiff based on politics when they terminated her employment due to her failure to politically support Yarborough.

35. On August 8, 2018, the Office of the Independent Inspector General ("OIIG") issued a finding that "…the evidence demonstrates that impermissible political factors were considered with respect to the employment decision to terminate Ms. Soto….".

36. As a result of the aforesaid acts of the Defendants, Plaintiff lost income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest as permitted by law.

37. The aforementioned acts of the Defendants were reckless, willful, wanton, malicious, oppressive, and in callous disregard and indifference to Plaintiff. Thus, Plaintiff requests the assessment of punitive damages and/or liquidated damages against the Individual Defendants in a sum as determined according to law and proof.

## COUNT I
## PLAINTIFF AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF 42 U.S.C. §1983 – POLITICAL DISCRIMINATION

38. Plaintiff realleges and incorporates paragraphs one (1) through thirty-seven (37) as though fully set forth at this place.

39. The First Amendment protects a wide spectrum of free speech and association, including a public employee's right to free association and to support or not support a political candidate of their own choosing.

40. Plaintiff engaged in the exercise of her rights under the First Amendment when he remained politically neutral to Yarbrough and not politically affiliated with her.

41. At the time of Plaintiff's termination, the Director of Human Resources position was not a position exempt from protections against politically based employment decisions.

42. Yarbrough and Acox deprived Plaintiff of her right to enjoy her employment free from political interference.

43. Yarbrough and Acox denied Plaintiff her rights under the First and Fourteenth Amendment when they falsely evaluated and terminated the Plaintiff based upon political reasons or factors, including her lack of affiliation with Yarbrough. Yarbrough and Acox terminated the Plaintiff so that Yarbrough could hire someone politically affiliated into the DOC position.

44. As a result of the Individual Defendants' actions, Plaintiff has suffered damages and other injuries including termination.

## COUNT II
**PLAINTIFF AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF 42 U.S.C. §1983 – POLITICAL RETALIATION**

45. Plaintiff realleges and incorporates paragraphs one (1) through thirty-seven (37) as though fully set forth at this place.

46. Yarbrough and Acox retaliated against Plaintiff for exercising her right to complain of political discrimination under the First Amendment when they terminated her employment after she complained to the RCA of political discrimination on several occasions, including on March

20, 2017 and March 23, 2017, and participated in investigations relating to potential political discrimination.

47. As a result of the Individual Defendants' actions, Plaintiff has suffered damages and other injuries.

## COUNT III
### PLAINTIFF AGAINST THE RECORDER'S OFFICE FOR VIOLATION OF THE *SHAKMAN* DECREES

48. Plaintiff realleges and incorporates paragraphs one (1) through thirty-seven (37) as though fully set forth at this place.

49. The Recorder's Office, through its agents, committed acts which constituted a violation of the *Shakman* Decrees in that the Individual Defendants took adverse actions and terminated Plaintiff based upon improper political considerations, to wit: her request to discipline politically connected individuals at the Recorder's Office, reporting political misconduct to the RCA, and her lack of political affiliation with Yarbrough.

50. On August 8, 2018, the OIIG determined that impermissible political factors were considered with respect to Plaintiff's termination.

51. The Recorder's Office, through its agent's conduct, violated the *Shakman* Decrees when it gave Plaintiff a bad evaluation and terminated her employment. The Defendant took these actions based upon political reasons or factors and in retaliation for Plaintiff's request to discipline politically connected individuals at the Recorder's Office and complaints to the RCA.

52. As a result of the Defendant's actions, Plaintiffs' employment was subject to improper political considerations and they suffered damages as well as other injuries including the loss of wages and benefits.

## COUNT IV
### Plaintiff Against COOK COUNTY For
### INDEMNIFICATION

53. Plaintiff hereby incorporates and realleges paragraphs one (1) through twenty-nine (29) as though fully set forth at this place.

54. Pursuant to 745 ILCS 10/9 – 102, 55 ILCS 5/4 – 6003, and 55 ILCS 5/5 – 1106, Cook County is empowered and directed to pay any judgment for compensatory damages (and any associated attorneys' fees and costs) for which an independently elected Cook County officer, such as the Cook County Recorder of Deeds or her deputies, including the Individual Defendants, acting within the scope of their employment is found liable.

55. The acts and/or omissions of the Individual Defendants and each of them were committed within the scope of their employment.

56. In the event that a judgment for compensatory damages is entered against Defendants and/or any of them, Cook County must pay the judgment as well as the associated attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by and through her attorneys, Ed Fox & Associates, requests the following relief:

A. That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

B. That Plaintiff be granted punitive or liquidated damages in an amount to be determined at trial;

C. That the Court grant to Plaintiff her reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

D.      That the Court grant such other and further relief as the Court may deem just or equitable.

> BY:  s/Jonathan R. Ksiazek
> Jonathan R. Ksiazek
> Edward M. Fox
> ED FOX & ASSOCIATES, LTD.
> Attorneys for Plaintiff
> 300 West Adams, Suite 330
> Chicago, Illinois 60606
> (312) 345-8877
> jksiazek@efox-law.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

> BY:  s/Jonathan R. Ksiazek
> Jonathan R. Ksiazek
> Edward M. Fox
> ED FOX & ASSOCIATES
> Attorneys for Plaintiff
> 300 West Adams, Suite 330
> Chicago, Illinois 60606
> (312) 345-8877
> jksiazek@efox-law.com