IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANNETTE SOTO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 18 C 4337 |
| v. ) | |
| ) | Judge John Z. Lee |
| KAREN YARBROUGH, ERWIN ACOX, ) | |
| JR., COOK COUNTY RECORDER OF ) | |
| DEEDS OFFICE, and COOK COUNTY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeannette Soto has brought this lawsuit against Defendants Karen Yarbrough, Erwin Acox, Jr., and the Cook County Recorder of Deeds Office ("the Recorder's Office"), and Cook County ("the County"), alleging that they discriminated and retaliated against her on the basis of her political affiliation, in violation of 42 U.S.C. § 1983. Yarbrough has moved to dismiss Soto's amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is denied.

**Background[1]**

Soto began working as the Director of Human Resources at the Recorder's Office on October 31, 2016. Am. Compl. ¶ 12, ECF No. 18. At that time, Yarbrough

---

[1] When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in favor of Plaintiff. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

was the elected Cook County Recorder of Deeds. *Id.* ¶ 8. Soto is not politically affiliated with Yarbrough. *Id.* ¶ 13.

Soto reported to Acox, the Chief of Human Resources at the Recorder's Office. *Id.* ¶¶ 9, 15–19. She alleges that she experienced various difficulties in working with Acox; for example, Acox refused to act on a report Soto submitted about attendance policy violations by an employee who was politically connected to Yarbrough. *Id.* ¶¶ 15–16. According to Soto, Acox also excluded her from meetings and gave her poor performance reviews. *Id.* ¶¶ 17–20. After receiving a negative evaluation in March 2017, Soto complained to the Recorder Compliance Administrator ("RCA")[2] that she believed she was being discriminated against because she was not politically affiliated with Yarbrough. *Id.* ¶¶ 18, 21.

Later that month, Soto was asked to assist in hiring a new Director of Compliance for the Recorder's Office. *Id.* ¶ 22. Specifically, she was assigned the task of reviewing applicants and categorizing them as qualified or not qualified for the position. *Id.* ¶ 23. Acox was "not supposed to be involved" in this process because he was one of the people who would be interviewing candidates. *Id.*

After Soto had compiled a list of qualified candidates, Acox asked to review the list and "check [her] work." *Id.* ¶ 25. He then "indicated to [Soto] that there were a few candidates" she incorrectly categorized as not qualified. *Id.* Interviews were conducted on March 21, 2017, but Acox had to recuse himself from the process

---

[2] In Soto's complaint, she refers to the "Recorder's Compliance Director ('RCA')." Am. Compl. ¶ 21. The Court takes judicial notice of publicly filed documents in *Shakman v. Cook County Recorder of Deeds*, No. 69-CV-02145 (N.D. Ill.) that refer to the person in this role as the Recorder Compliance Administrator. *See, e.g.,* ECF No. 6148.

2

because he knew one or more of the candidates. *Id.* ¶ 26. After the interviews were completed, Soto was tasked with entering the candidates' names into a spreadsheet, in the order in which they had been ranked. *Id.* ¶ 27. Although he had recused himself from the interview process, Acox ordered Soto to show him the spreadsheet. *Id.*

Yarbrough eventually selected Kevin Thomas for the Director of Compliance position on March 23, 2017. *Id.* ¶ 28. According to Soto, Acox knew Thomas personally. *Id.* Thomas was not the highest ranked candidate for the position, so Yarbrough was required to submit a statement as to why she had not chosen the first ranked candidate. *Id.* When Acox subsequently asked Soto to prepare an offer letter for Thomas, she told him she could not do so without Yarbrough's statement as to why Thomas had been selected. *Id.* ¶ 29.

Soto also voiced concerns about Acox's participation in the hiring process to the RCA, who allegedly told her that Acox's involvement had been improper. *Id.* ¶ 30. Soto was then designated the Acting Head of the Human Resources Department and was asked to suspend the hiring process. *Id.* ¶ 31. The next day, on March 24, 2017, Acox and Yarbrough fired Soto, stating that she was an "at will employee," that it was "not working out," and that she was still within her six-month probationary period. *Id.* ¶ 32.

## Legal Standard

Rule 8 provides that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

3

8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

### I. Political Discrimination (Count I)

In Count I, Soto claims that Yarbrough and Acox discriminated against her because she was not politically affiliated with Yarbrough, in violation of her First Amendment rights. Yarbrough argues that this claim must be dismissed because Soto has failed to sufficiently allege Yarbrough's personal involvement in the alleged discrimination.

To state a claim under § 1983 for a First Amendment violation, a public employee must show that: (1) her conduct was constitutionally protected; (2) she suffered a deprivation likely to deter free speech; and (3) the constitutionally protected conduct caused the adverse employment action. *Gunville v. Walker*, 583 F.3d 979, 984 (7th Cir. 2012). Additionally, for a supervisor to be held liable under § 1983, she must have been personally involved in the alleged constitutional violation. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Thus, Soto must allege that Yarbrough "kn[ew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turned a blind eye toward it[.]" *Id*.

Here, Soto has sufficiently alleged Yarbrough's personal involvement in the claimed political discrimination. The complaint states that Acox and Yarbrough were both aware that Soto was not politically affiliated with Yarbrough.[3] Am. Compl. ¶ 13. She describes Acox's involvement in the hiring process for the Director of Compliance, despite the fact that he had recused himself. *Id*. ¶¶ 22–29. As a result of this involvement, she alleges, Yarbrough ultimately selected a candidate personally connected to Acox. *Id*. ¶ 28. And when Soto raised concerns about the selection of that candidate and pushed back against Acox's instruction to prepare an offer letter for Thomas without having first received the required explanatory statement from Yarbrough, Yarbrough and Acox fired her. *Id*. ¶¶ 29–32.

---

[3] It is well established that political affiliation (or non-affiliation) "is a right protected under the [F]irst [A]mendment." *Hermes v. Hein*, 742 F.2d 350, 353 n.3 (7th Cir. 1984).

5

These allegations support a reasonable inference that Yarbrough was aware of and approved of Acox's participation in the hiring process, and that she fired Soto because Soto was politically unaffiliated with her and opposed to Acox's involvement. At this stage, that is sufficient to state a claim for political discrimination against Yarbrough. Accordingly, the motion to dismiss is denied as to Count I.[4]

## II. Political Retaliation (Count II)

In Count II, Soto alleges that Yarbrough and Acox retaliated against her in violation of her First Amendment rights when she was fired after she had reported what she believed to be improper actions by her supervisor to the RCA. A First Amendment retaliation claim requires that a plaintiff's speech be constitutionally protected, *Gunville*, 583 F.3d at 983, and a public employee's speech is protected only if she is speaking "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Yarbrough argues that Soto's speech is not constitutionally protected because Soto made these complaints in the course of her job duties.

It is well settled that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Soto contends, however, that she did not make the complaints in question as part of her job duties because she "had no formal

---

[4] The Court does not consider Yarbrough's argument that Count I must be dismissed because she is entitled to qualified immunity. This argument was raised for the first time in her reply brief. Accordingly, it has been waived. *See, e.g., Billhartz v. C.I.R.*, 794 F.3d 794, 801 n.4 (7th Cir. 2015) ("[I]t is well-settled that arguments first made in the reply brief are waived.").

6

responsibilit[y] to report to the RCA—a separate and independent body that monitors political corruption." Pl.'s Resp. Opp. Mot. Dismiss at 8, ECF No. 41.

The Court agrees. Nothing in Soto's complaint suggests that reporting to the RCA was a responsibility of her position. In contrast to the cases cited by Yarbrough, Soto has not alleged that she made an internal workplace complaint that was "part of the job." *See Forgue v. City of Chi.*, 873 F.3d 962, 967 (7th Cir. 2017) (quoting *Roake v. Forest Pres. Dist. of Cook Cty.*, 840 F.3d 342, 346 (7th Cir. 2017)) (finding that a police officer's internal complaint of police misconduct was not entitled to First Amendment protection); *Kubiak v. City of Chi.*, 810 F.3d 476, 482 (7th Cir. 2016) (same). Rather, Soto states that she reported suspected misconduct to an independent authority responsible for monitoring political corruption in the Recorder's Office. This is sufficient to allege that she was speaking as a citizen, rather than an employee. *See Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) (noting that courts must be "especially careful in concluding that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption").

What is more, Soto has sufficiently alleged that she was speaking on a matter of public concern. Yarbrough characterizes Soto's complaint as personal, arguing that Soto merely took issue with "Acox's supervision of her" and her "negative 90-day evaluation." Def.'s Mem. Supp. Mot. Dismiss at 4, ECF No. 35. But Soto states that she complained to the RCA about "unlawful political discrimination," and irregularities in the hiring process for the Director of Compliance. Am. Compl. ¶¶ 21,

7

30–31. The Seventh Circuit has repeatedly held that "speech alleging government corruption and malfeasance is of public concern in its substance." *Spiegla v. Hull*, 371 F.3d 928, 937 (7th Cir. 2004) (collecting cases). Accordingly, the Court will not dismiss Soto's First Amendment retaliation claim on this basis.

### III. Violation of the *Shakman* Decree (Count III)

In Count III, Soto alleges that Cook County and the Recorder's Office are liable for a violation of the consent decree issued in *Shakman v. Democratic Org. of Cook County*, 481 F. Supp. 1315, 1358 (N.D. Ill. 1979), *vacated sub nom. Shakman v. Dunne*, 829 F.2d 1387, 1389 (7th Cir. 1989). The consent decree prohibits the Recorder's Office from taking certain employment actions based on political considerations and binds the County and the Recorder's Office to liability for the actions of their employees under a *respondeat superior* analysis. *See Everett v. Cook Cty.*, 704 F. Supp. 2d 794, 804 (N.D. Ill. 2010) (citing *Wzorek v. City of Chi.*, 906 F.2d 1180, 1184 (7th Cir. 1990)).

In her reply brief, Yarbrough argues that Count III must be dismissed because "Plaintiff has failed to sufficiently plead that Recorder's Office's agents engaged in political discrimination and retaliation." Def.'s Reply Supp. Mot. Dismiss at 7, ECF No. 53. But as explained above, the Court declines to dismiss Counts I and II. Accordingly, the Recorder's Office and the County could still be held liable for a violation of the *Shakman* decree. The motion to dismiss is denied as to Count III.

### IV. Indemnification (Count IV)

8

In Count IV, Soto brings an indemnification claim against the County, in the event that one or more of the individual defendants is found liable. Again, Yarbrough argues that this claim must be dismissed. But, as with Count III, Count IV remains as long as Soto has viable claims against an individual Defendant. Because Counts I and II survive, the motion to dismiss is denied as to Count IV.

## Conclusion

For the reasons stated herein, Yarbrough's motion to dismiss [is denied.

**IT IS SO ORDERED.**          **ENTERED   8/5/19**

_____
**John Z. Lee**
**United States District Judge**